May Term,
1854.

THOMAS
v.
THE BOARD
OF COMMIS-
SIONERS, &c.

---

THOMAS and Others *v.* THE BOARD OF COMMISSIONERS OF THE COUNTY OF CLAY and Others.

The act of 1853, "to authorize the re-location of the seat of justice of the county of *Clay*," &c., is in conflict with ss. 22 and 23 of art. 4 of the constitution.

The legislature has no authority, under the constitution, to enact a local or special law, when a general law can be made applicable.

The removal of county seats can be made the subject of a general law.

It is competent for the Courts to inquire whether a general law can be made applicable to the subject matter of a local or special law enacted by the legislature.

*Monday,*
*May 22.*

APPEAL from the *Clay* Circuit Court.

DAVISON, J.—This was a bill in chancery. The facts presented by the bill are these:

On the 14th of *March*, 1853, there was filed in the office of the clerk of the Circuit Court of *Clay* county, what purported to be an act of the general assembly of *Indiana*, passed *February* 3d, 1853, entitled, "An act to authorize the re-location of the seat of justice of the county of *Clay*," &c. That act provides, *inter alia*, that *Isaac W. Denman*,

*William K. Edwards, Burr McGrew, John Johnson* and *William D. Allen,* be appointed commissioners to re-locate said seat of justice; that said commissioners should meet at the house of *George Moss,* on the second *Monday* in *April,* 1853, or as soon thereafter as was practicable, should take an oath, &c., to discharge their duties, &c., and thereupon proceed to re-locate the seat of justice in said county, &c. Acts of 1853, p. 27. The bill alleges said act to be unconstitutional, and of no binding force, and prays for an order enjoining said commissioners from proceeding to make such re-location, &c.

The defendants demurred. The demurrer was sustained and the bill dismissed. To reverse the decision of the Circuit Court, this appeal is prosecuted.

The statute before us is, no doubt, local in its operation. Then, has the legislature power to enact local laws on the subject of the removal of county seats? In other words, does the act in question conflict with sections 22 and 23 of Article 4 of the constitution? These provisions are as follows:

" SEC. 22. The General Assembly shall not pass local or special laws, in any of the following enumerated cases, that is to say: regulating the jurisdiction and duties of justices of the peace and of constables; for the punishment of crimes and misdemeanors; regulating the practice in courts of justice; providing for changing the venue in civil and criminal cases; granting divorces; changing the names of persons; for laying out, opening and working on, highways, and for the election or appointment of supervisors; vacating roads, town plats, streets, alleys, and public squares; summoning and empanneling grand and petit juries, and providing for their compensation; regulating county and township business; regulating the election of county and township officers, and their compensation; for the assessment and collection of taxes for state, county, township, or road purposes; providing for supporting common schools, and for the preservation of school funds; in relation to fees or salaries; in relation to interest on money; providing for opening and conducting elections of state,

May Term,
1854.

THOMAS
v.
THE BOARD
OF COMMIS-
SIONERS, &c.

county, or township officers, and designating the place of voting; providing for the sale of real estate belonging to minors or other persons laboring under legal disabilities, by executors, administrators, guardians, or trustees.

"SEC. 23. In all the cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the state."

These two sections relate to the same subject. The former is plainly a restriction upon legislative power. In express terms it inhibits special legislation in certain enumerated cases. The latter refers to the cases enumerated in the preceding section, and then places on the same footing all other cases that can be made the subject of a general law. From this section it is inferred that a local law may be enacted in any case where a general law can not be applied. In view of both sections, it is very evident that to prohibit special legislation was a prominent object of the convention, and that the members of that body intended to limit the action of the legislature, relative to the enactment of local or special laws, in strict conformity to the manner therein prescribed. The purpose of the 23d section is obvious. It was designed to extend the principle of the former section to any and all cases where it could be made to apply.

Assuming that the removal of county seats is not within the restrictive provisions of the 22d section, then this inquiry results: Can such a case be made the subject of a general law?

The solution of that question is not difficult. It is not within the sphere of judicial action to point out the features of any law; that, indeed, would be treading upon legislative ground. But the record presents a case—the re-location of a seat of justice. To apply the law to the case before us, is a proper exercise of judicial power; and that being done, we do know that to such a case a general law can be aptly applied. Let any one at all acquainted with the forms of legislation attempt to draw up a general

law on the subject, and he will soon find that the thing can certainly be done.

The mere suggestion that probable inconvenience might arise in the execution of such a law, can have no weight against the manifest intent of the constitution; especially, when a local law on that subject might be obnoxious to the same objections.

It is, however, insisted that the legislature have decided a general law to be inapplicable to the case under consideration; that from this decision there is no appeal; and that, therefore, it is not competent for this Court to decide upon the validity of the law in question. If that position be correct, the 23d section has no vitality; nor is there any reason why it should have a place in the constitution. It would impose no restriction upon the action of the legislature, nor confer any power which that body would not possess in the absence of such a provision. If that section permits the legislature to enact a special or local law *ad libitum*, in any case not enumerated, the principle involved would deprive this Court of all authority to call in question the correctness of a legislative construction on its own powers under the constitution.

We are not prepared to sanction this doctrine. The maxim "that parliament is omnipotent," has no place in *American* jurisprudence. Whether the legislature have, in the case at bar, acted within the scope of their authority, is, in our opinion, a proper subject of judicial inquiry. To illustrate: Suppose an act should be passed limiting the term of office of the common pleas judge of *Marion* county to one year, while the term of office of all other common pleas judges in the state is four years. Now, that case would not be within the 22d section; nor is the term these judges shall serve provided for in the constitution. It appears to us that the power of this Court to inquire whether, in the case stated, a law having uniform operation throughout the state could be made applicable, would not be doubted.

But a question of law arises in the record, upon which the constitution requires this Court to give a decision.

<div style="margin-left:auto">

May Term, 1854.

</div>

Art. 7, sec. 5. Can a general law be applied to the case under discussion? We must answer in the affirmative, and, therefore, decide the act in question to be unconstitutional and void.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. M. Hanna,* for the appellants.

*S. B. Gookins,* for the appellees.