STATE EX REL. LANIER ET. ALS., PLAINTIFFS, VS. PADGETT ET ALS., COUNTY COMMISSIONERS OF SUMTER COUNTY, RESPONDENTS.

1. The act of the Legislature, approved August 3, 1868, Chapter 1688, locating the county site of Sumter county at Leesburg, is a valid act. It is not inhibited by the 17th Section of Article IV of the Constitution, nor does the 18th Section of that Article prohibit the Legislature from determining whether a general law can be made applicable in the location of a county site. Such legislative determination is final, except in the cases specially enumerated in Section 17.

2. An order made in a suit in equity directing the removal of county offices and records to a place designated therein as the county site, is not a bar to a proceeding by mandamus to determine the legal location of such county site.

·3. A return to an alternative writ of mandamus may be amended to supply material facts inadvertently omitted to be stated in the return.

4. The act, approved February 2, 1869, (Ch. 1700,) repealing the fourth, fifth, sixth and seventh sections of an act to provide for the publication of the laws and of official and legal advertisements, approved July 31, 1868, and reviving laws in force prior to the passage of the last named act, is constitutional.

5. At the time of ordering and holding an election in Sumter county in 1869 to choose a county site, there was no law in force requiring publication of notice of the election in a newspaper. Notice given by posting written notices of the time and purposes of the election in various public places in the county, so that the voters could have an opportunity to know thereof, is deemed sufficient public notice.

·6. An order made at chambers, upon bill in equity, requiring the county officers to remove the records of the county from Sumterville to Leesburg, in Sumter county, mentioning Leesburg as the county site, no notice of application for such order or opportunity to be heard in the matter having been given to the parties affected, is not a final determination of rights, and does not adjudicate upon the proper location of the county site.

JUNE TERM, 1882. 519

The State ex rel. v. Co. Com'rs Sumter Co.—Statement of Case.

7. The act of January 28, 1869, (Chap. 1695,) providing that the county
site of a county may be located by a vote of a majority of legal
voters voting upon the question, is a valid act, not in conflict
with Section 16, Article XVI, of the Constitution. The latter
provision applies to elections for choosing officers, and does not
include "elections" held to ascertain the wishes of the people
in locating county seats.

This is a proceeding by mandamus upon the relation of
Thomas C. Lanier and others against the County Commis-
sioners of Sumter county to compel them to replace and re-
establish the public records and public county offices of the
county at the town of Leesburg as the county site of the
county, from which they have been removed to Sumterville
as the county site.

Lanier and others, the relators, allege that they are resi-
dents and citizens of the county of Sumter, in the State of
Florida, and that said petitioners, John C. Love, L. B. Lee
and F. C. Childs are residents of and own large and valuable
lots of land immediately in the town of Leesburg in said
Sumter county, and that all of said petitioners reside and
are the owners of large and valuable tracts of land quite
near and in the immediate vicinity of said town of Lees-
burg, upon which property in said county of Sumter said
petitioners have heretofore paid, and are in future liable to
pay large and valuable tax assessments for the general
purposes of said county government, and that as such
citizens, resident property owners and tax-payers of
said Sumter county, they are deeply interested in the
location of and in the authoritative establishment of the
county site of said county ; that the town of Leesburg has
been for thirteen years past the legally established county
site of said Sumter county, State of Florida, *de jure et de
facto* during all that time, being generally, publicly and offi-
cially so recognized and acknowledged during all that time,
being the place where have been held the various terms of

the Circuit Courts holden in and for said Sumter county, and where all of the public offices with their appurtenant public records have been kept belonging to the public affairs of said county, and that said town of Leesburg is now the lawful county site of said Sumter county, Florida ; that the Board of County Commissioners in recognition of the fact that the said town of Leesburg was the legally established and authoritatively recognized county site of said Sumter county ordered an election to be held in said county of Sumter on the tenth day of October, A. D. 1881, for the purpose of having it decided by the voters of said county whether or not the said county site should be located at any other point in said county than at said town of Leesburg ; that after said election had been held relators filed their bill in chancery in the Circuit Court of Sumter county against the said County Comissioners, in which was set forth and alleged at length divers and various informalities, irregularities and illegalities, not only in the orders providing for the holding of said election, but in the manner and form and conduct of said election itself, and said petitioners prayed amongst other things in their said bill in substance that said election might be decreed and adjudged to be null, illegal aad inoperative and void, and that the County Commissioners might be restrained and enjoined from removing the public records and public county offices from Leesburg as the county site, or from doing any other act in recognition of, or in pursuance of, or under color of authority derived from the result of said illegal election, and that said bill of complaint was exhibited and presented to the Judge presiding over said Circuit Court of Sumter county upon an application for the order of injunction therein prayed, and that the said Judge at Chambers rendered an order in said cause refusing to grant this injunction as prayed for in said bill of complaint of said petition-

ers herein as complainants therein. From the order thus refusing the injunction complainants entered their appeal to this the Supreme Court of the State of Florida, and that said cause was heard and determined by this the Supreme Court of Florida at the January Term, A. D. 1882, when a decision was rendered and pronounced therein by this honorable court whereby the said election in said Sumter county was finally held and adjudged in substance to be wholly illegal, inoperative and of no effect. That after said petitioners had entered and taken their appeal in said cause to this honorable court, and during the pendency of said appeal in said cause before this the Supreme Court of Florida, and before the rendition of said decision in said cause by this court, to-wit: on or about the 15th day of October, A. D. 1881, the said respondents herein, acting in their official capacity, ordered, had and procured all of the public records and all of the public county offices removed, and did have the same taken and removed from the said town of Leesburg to the village or place called Sumterville, where the said Board of County Commissioners have kept the said public records and said public county offices ever since, and still have and keep the same, requiring and obliging all acts and proceedings necessary and proper to be done and instituted at the county site of any and all counties to be done and instituted at said village of Sumterville; that the said transfer and removal of public records, &c., was ordered and procured to be done by the said County Commissioners solely by reason of and under color of authority derived from the result of said illegal and void election held on the 10th day of October, A. D. 1881, and is a great public hardship and wrong to said petitioners and to all other citizens of said county.

There was a return by respondents, and relators demurred thereto.

Chapter 1668, "An act to locate the county site of Sumter county and for other purposes," approved August 3, 1868, provides that from and after its passage the county site "shall be permanently located at the town or village of Leesburg," and makes it the duty of the officers of the county, who are required by law to have their offices at the court-house, to remove all records and everything appertaining to their offices to said county site; and it requires that all courts required to be holden at the county site " shall be held at said town of Leesburg, the county site created by this act." The County Judge and County Commissioners, who are directed to lay out in town lots the tract of land on which the county site is located by the first section of the act, to-wit: W $\frac{1}{2}$ of NE $\frac{1}{4}$, of Sec. 26, T. 19, R. S., 24 E, (and in the event they cannot procure it they are to select the next most eligible spot of ground near Leesburg,) are authorized to make arrangements for county offices, for holding courts and for erection of suitable public buildings, and to proceed to sell " the county property at Sumterville for the uses aforesaid."

Chapter 1695, Laws of Florida, approved January 28, 1869, provides that the registered voters of any county wishing to change the location of their county site shall present to the Board of County Commissioners a petition, signed by one-fourth of the registered voters, praying a change of location of such county site. The Commissioners, on receiving such petition, are to order an election at the several precincts for the location of such county site, giving at least thirty days' notice. Sections 3 and 4 direct how the election shall be conducted and returns made and canvassed, and declare that " the place receiving a majority of the number of registered votes shall be the county site of said county for ten years," and makes it the duty of the Commissioners to have certain public buildings erected and pro-

vide suitable offices for all county officers as are required to keep their offices at the county site.

The other facts are sufficiently stated in the opinion.

*Taylor & Sanchez* and *J. H. Goss* for Relators.

*Cockrell & Walker* and *Hocker & Mabry* for Respondents.

THE CHIEF-JUSTICE delivered the opinion of the court:

There are but two questions legitimately arising upon the pleadings and the facts therein stated. The first is whether the act of the Legislature, approved August 3, 1868, Chap. 1668, locating the county site of Sumter county at Leesburg, is constitutional; and the other is whether the elections alleged in the return of the respondents to have been held since the passage of that act, under the general law providing for the location of county sites, were held and conducted in accordance with law so as to effect a change of the location of the county site of Sumter county.

We consider first the question of the constitutionality of the act of 1868.

Section 17, Article IV, of the Constitution of 1868, provides that " the Legislature shall not pass special or local laws in any of the following enumerated cases, that is to say, * * * regulating county, township and municipal business," &c.

Section 18 reads: " In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State."

The Constitution of Indiana, from which these sections were substantially copied, was adopted in 1851.

The Constitution of Nevada, adopted in 1864, contains the same provisions. Similar provisions are found in the

Constitutions of Missouri, Iowa, Kansas and some others of the Western States.

We proceed to examine some of the cases in several States where the precise question has been repeatedly considered and adjudicated. Decisions of the courts of States from which constitutional provisions and statutes are copied, are entitled to great weight as authorities in construing them.

In the case of Thomas vs. The Board of Commissioners of Clay County, 5 Ind., 4, it was held that an act of the Legislature of that State " to authorize the re-location of the seat of justice of the county of Clay was in conflict with Sections 22 and 23 of Article 4 of the Constitution of Indiana." (These sections correspond with Sections 17 and 18 of Article 4 of the Constitution of Florida.) After brief argument the court puts the whole matter in the form of question and answer as follows : " *Can* a general law be applied to the case under discussion ? We must answer in the affirmative, and therefore decide the act in question to be unconstitutional and void." The court say : " Assuming that the removal of county seats is not within the restrictive provisions of the 22d section, then the inquiry results, Can such a case be made the subject of a general law ? * * * Let any one at all acquainted with the forms of legislation attempt to draw up a general law on the subject, and he will soon find that the thing can certainly be done. It is, however, insisted that the Legislature have decided a general law to be inapplicable to the case under consideration ; that from this decision there is no appeal, and that, therefore, it is not competent for this court to decide upon the validity of the law in question. If that position be correct, the 23d section has no vitality ; nor is there any reason why it should have a place in the Constitution. It would impose no restriction upon the action of the Leg-

islature, nor confer any power which that body would not possess in the absence of such a provision."

The Supreme Court of Iowa, in cases presenting the same or similar questions, has followed or approved the decision of the Indiana case referred to. Town of McGregor vs. Baylies, 19 Iowa, 43.

But subsequently the Supreme Court of Indiana had the question before it in the case of Gentile vs. The State, 29 Ind., 409, and referring to the Clay county seat case, (5 Ind.) it says that the correctness of the ruling in that case may be seriously doubted. " The reasoning upon which it is based is regarded as unsound, and does not, therefore, support the conclusion reached. * * The object of the provision was not to confer any power on the Legislature, but to restrain that body in the exercise of an inherent power of sovereignty, which, in the absence of such a restriction, it would possess. But the restriction is not specific as to the particular cases to which it applies, and hence it requires the exercise of legislative judgment in determining the question of its application in each case as it may arise. * * * It is, therefore, an error to say that the restriction is of no validity unless the correctness of the legislative judgment is subject to revision by the courts. * * But that provision does not involve any question of the power of the Legislature to enact a law on any particular subject. It involves the question of fact whether the subject of the act is such that a general law could be made applicable. It is a question which, as said before, the Legislature must of necessity determine ; and it may be pertinently asked what possible benefit could arise from the power of the courts to call in question the correctness of such legislative decisions ? We are far from claiming that the Legislature is omnipotent, but on the other hand we are not sure that the superior wisdom of the courts would,

in such cases, enable them *to judge more accurately than the Legislature.* The question is one which from its very nature peculiarly addresses itself to the legislative judgment, and if a local law be enacted the reasons upon which the Legislature adjudged that a general law could not be made applicable however satisfactory they may appear to the members of that body, may not appear on the face of the law, and the courts are left in ignorance of them, and if permitted to review the legislative decision must act upon such reasons and facts as may suggest themselves to the mind ; and thus the Legislature and courts would be liable to be brought into frequent conflict, to no beneficial purpose. The decision in the case referred to (5 Ind.) is in conflict with other adjudications on a kindred subject which seems to involve the same principle." The court refers to Carpenter vs. Montgomery, 7 Blackf., 415, where it was held by the same court that the Legislature must necessarily be the judge of the existence of the emergency where the Constitution declaring that no act of the Legislature should be in force until published in print, " except in cases of emergency," and though an act was passed declaring in terms that it should be in force from its passage, without expressly declaring the emergency. The courts could not determine that the emergency did not exist against the implied opinion of the Legislature that it did exist. Both involve the same principle in requiring the exercise of legislative judgment.

The Supreme Court of Illinois would not look into the constitutionality of certain acts of a local character because of the long continued practice of the Legislature, and the wide ruin it would produce to declare them void. Johnson vs. Joliet & Chi. R. R. Co., 23 Ill., 207.

In Missouri the Supreme Court decided that an act creating a Probate Court for Boone county was not obnoxious

to the Constitution containing a section corresponding to Section 18, Article IV., of the Constitution of Florida. The State of Missouri vs. County Court of Boone County, 50 Mo., 317. That court uses this language: "Either class of enactments might be supplied by general laws, but the special laws are deemed much better, and therefore are considered necessary. Who is to decide when such necessity arises? * * But a special law is scarcely absolutely necessary in any case, as in almost every case the particular end in view might be attained by a general law. The Supreme Court of Indiana, in Thomas vs. B'd Com., 5 Ind., 4, stood upon the superlative degree and required the strictest construction of a similar clause in the Constitution of that State, and said that in no case could a special law be resorted to where a general law would cover the case. I cannot see the force of the reasoning of the Indiana court in that case, and indeed the authority of the case is very much shaken, if not entirely set aside, in a subsequent case where an act creating a new Judicial Circuit was upheld. 7 Ind., 328. * * In speaking of the law creating the Judicial Circuit the court said: This does not seem to us to be such a case, and even if we doubted we should be bound to throw the benefit of our doubt in favor of the constitutionality of the law. If the court had been governed by the reasoning in the fifth volume this law would have been set aside as unconstitutional, because there is no doubt the new Circuit could have been provided for by framing a general law. * * But who is to decide when a general or a special law will answer the best purpose? It strikes me that this rule, in reference to general or special laws, is laid down as a guide for the Legislature, and the Legislature is to judge of the necessity of the particular case. The Legislature is quite as able to do this as the courts. The Legislature must, in the first instance, exercise their

discretion as to the necessity of a special instead of a general act. How can the courts control that discretion ? If a discretion be conceded at all, in my judgment, the courts have no right to control it. It is agreed that there is no discretion in regard to the passage of certain enumerated laws. They are inhibited by the letter of the Constitution. When the Legislature undertakes to pass these inhibited laws it is the plain duty of the courts to declare them unconstitutional. But here we are asked to pronounce upon the necessity of a law, and whether it can be better supplied by a general law than a special act. This is the exercise of the court to control the discretion of the Legislature. I am not satisfied that this can be done."

The Supreme Court of Kansas in State of Kansas vs. Hitchcock, 1 Kansas, 178, 184, arose from the passage of an act to provide for the location of a county seat, and the court say : " We understand this section of the Constitution as leaving a discretion to the Legislature, for it would be difficult to imagine a legislative purpose which could not be accomplished under a general law. If it be possible, as we think it is, to frame a general law under which the purpose of any special law could be accomplished, then that provision of the Constitution, if liberally construed, would absolutely prohibit all special legislation. Such is not its purpose. It recognizes the necessity of some special legislation, and seeks only to limit, not prohibit it. * * * The Legislature must necessarily determine whether their purpose can or cannot be expediently accomplished by a general law. Their discretion and sense of duty are the chief, if not the only, securities of the public for an intelligent compliance with that provision of the Constitution. Whether we could, in any conceivable case presenting a flagrant abuse of that discretion, hold a private law invalid as contrary to that provision of the Constitution, we need

not here decide; but we would certainly not hold such a law invalid merely because it would, in our our opinion, have been possible to frame a general law under which the same purpose could have been accomplished."

In the case of Hess vs. Pegg, 7 Nev., 28, the court say: " There being nothing before this court except the statute, unless it manifestly appear that a general law could have been made applicable, the one under discussion must stand. To be applicable the law must meet the just purpose of legislation, and be calculated to as well subserve as any other the interests of the people of the State, or the particular class or portion to be affected. Clarke vs. Irwin, 5 Nev., 111. Respondent claims that such is this case; and not only so as an abstract proposition, but that this Legislature has manifested the fact by passing such a general law. The inference is the other way. The general referred to is operative only under certain conditions. Did these conditions exist in this case? There is nothing before this court to show whether they did or did not. Perhaps imperative reasons of public policy, or the good of the people of Washoe county, demanded the act of 1871. * * * That special or local legislation is to be avoided, so far as practicable, is undoubtedly the teaching of the Constitution; thus far and no farther it goes. Hardly any subject can be conceived more purely local than the fixing a county seat, and if in any case local legislation is proper, that is the one. The Legislature has full and complete control of the entire subject of counties and county seats, save where prohibited or limited by constitutional provisions. * * * For this court to oppose its judgment to that of the Legislature, excepting in a case admitting of no reasonable doubt, would not only be contrary to all well considered precedent, but would be an usurpation of legislative functions."

34

In the case of Evans vs. Job, 8 Nev., 322, 340, the court say : " The fact that the subject of the removal of county seats is general is admitted by respondents, and we do not understand them as denying the proposition that in some of the counties the general law might be applicable. The real question is whether, at the time of the passage of the law under consideration, it was applicable to the removal of the county seat of Humboldt county. * * * Neither does the fact that a general law has been passed prove that it was applicable. Undoubtedly the presumption existed when the general law was passed that it was and would be applicable to every county in the State, but that presumption is met and overcome by the passage of the law under consideration, declaring, as in effect it certainly does, that the general law is not applicable to this particular county."

Harris, in delivering the opinion of the Court of Appeals in New York, says : "A legislative act is not to be declared void upon a mere conflict of interpretation between the legislative and judicial power. Before proceeding to annul by judicial sentence what has been enacted by the law-making power, it should clearly appear that the act cannot be supported by any reasonable intendment or allowable presumption." People vs. Supervisors of Orange, 17 N. Y., 241.

" The people in framing the Constitution committed to the Legislature the whole law-making power of the State, which they did not, expressly or impliedly, *withhold*. Plenary power in the Legislature for all purposes of civil government is the rule. A prohibition to exercise a particular power is the exception. In inquiring, therefore, whether a given statute is constitutional it is for those who question its validity to show that it is forbidden." People vs. Draper, 15 N. Y., 543 ; Bank of Chenango vs. Brown, 26 N. Y., 469.

No rule of construction is better settled in this country, both upon principle and authority, than that the acts of a State Legislature are to be presumed constitutional until the contrary is shown. Sears vs. Cottrell, 5 Mich., 259.

"It is but a decent respect due to the wisdom, the integrity and the patriotism of the legislative body by which any law is passed to presume in favor of its validity." Ogden vs. Saunders, 12 Wheat., 270; Cooley's Const. Lim., 183.

It might be superfluous to attempt to add anything by way of argument to the reasoning of the several decisions from which we have so liberally quoted, and we are not inclined to do so at the present time.

Our judgment is that the act of 1868, Chapter 1668, locating the county site at Leesburg, was within the constitutional power of the Legislature; that the location of county sites is not a regulation of "county, township or municipal business" within the meaning of the Constitution, and that the Legislature may locate a county site by a special or a general law.

The return of the respondents avers that on the sixth day of June, 1881, there were presented to the County Commissioners of Sumter county "petitions signed by one-third of the registered voters of said county requesting them to order an election for the purpose of locating or legally locating the county seat of Sumter county, and that said Board thereupon ordered an election to be held, thirty days' notice prior thereto having been given by publication in a newspaper in said county, on the tenth day of October, 1881; that such election was duly held, a large vote polled and the canvass thereof made by the County Commissioners on the 15th day of October, 1881, and the town of Sumterville was declared elected as the county seat by virtue of said election."

The matter of this election and its legal effect was before this court at the last term in the suit of Lanier *et al.*, Appellants, against E. M. Padgett, *et al.*, County Commissioners, &c., (18 Fla., 842,) and it was there held that under the act of 1872, Chapter 1890, being a general act to allow the voters of the several counties to locate their county sites, the Board of County Commissioners had no authority to order an election for that purpose, *unless the terms and conditions of the act were strictly observed ;* and because it appeared that there had not been petitions presented to the Board signed by two-thirds of the registered voters " *praying for a change of the location* of" such county site," the Board of County Commissioners of Sumter county had no jurisdiction to act in the matter, and the election so held had no legal validity.

This return fails to show that the petitions required by law were presented to the Board " praying for a change of the location of the county site," or that the petitioners desired such change, and we cannot hold that such election was held on the tenth day of October, 1881, under any authority of law.

It is further alleged by the respondents that " on the fourth day of September, 1869, and after said pretended location of the county seat at Leesburg, one-fourth of the registered voters of Sumter county presented a petition to the Board of County Commissioners of Sumter county praying said Board to order an election to change the location of the county seat of Sumter county according to the laws of the State of Florida then in force, and that upon the reception of said petition said Board of County Commissioners on the 4th day of September ordered an election to locate the county seat of said county to be held on the ninth day of October, 1869. Further, that an election was held in pursuance of said order, and was conducted in the

manner provided by law, and that at said election three hundred and fourteen votes were cast, and of that number the town of Sumterville received one hundred and eighty-six votes, that being a majority of fifty-eight votes for Sumterville." That the votes were regularly canvassed, and the town of Sumterville was declared by said Board duly elected the county seat of said county by virtue of said election ; that the Board then caused the records and public offices of the county to be kept and held at said town of Sumterville, where they remained for about two months when they were removed back to Leesburg by an order of the Circuit Judge indorsed upon a bill in chancery, the said order having been made before the defendants therein had been served with process and without notice to them, and no final decree or order after service of process or notice was ever made under said bill.

We cannot regard the order referred to as having any effect upon the rights of the parties in this proceeding, or in determining the location of the county site of Sumter county.

The return of the respondents however fails to show that any notice was given of the holding of the election on the ninth day of October, 1869, as required by the general law then in force providing for the location of county sites. Chapter 1695, Laws of 1869. An election held without such notice was wholly irregular and of no effect. The requirements of the statute in matters of this character must be strictly complied with.

The result is that the return of the respondents fails to show good cause for not complying with the mandate of the alternative writ, and the demurrer of the relators is sustained. It being suggested, however, by respondents' counsel that in fact the proper notice of the holding of the election was given thirty days before the holding of the

election on the ninth day of October, 1869, and that the omission to allege that such notice was given was inadvertent, and counsel for respondents desiring to amend their return, leave is granted to file an amended return within thirty days, a copy of such amended return to be served on the relators or their counsel. An order will be entered to that effect.

The respondents filed an amended return, which was demurred to by the relators. The return and demurrer are fully explained in the following opinion:

THE CHIEF-JUSTICE delivered the opinion of the court:

The demurrer of the relators to the return of the respondents filed August 1, 1882, having been sustained with leave to respondents to file a further or amended return, an amended return has been duly made in which it is alleged, in addition to the facts already stated, that upon the presentation of the petition to the Board of County Commissioners of said county, signed by more than one-fourth of the registered voters of the county, praying a change of location of the county seat, the County Commissioners " ordered an election to be held in the various precincts of said county on the ninth day of October, 1869, for the purpose of locating the county seat of said county, which time was more than thirty days after the making of the order." They allege that "due notice of said election was given for thirty days prior to holding the same by posting notices thereof at various public places in said county, (there being no newspaper in said county,) one of which was posted at the county seat of said Sumter county; which said notices were in writing and to the effect that an election would be held on the day aforesaid (9th October, 1869,) at the various precincts in said county for the purpose aforesaid; and that

by reason of said notices, so given as aforesaid, the voters and people of said county had full and ample notification and knowledge of said election, and the purpose of the same." Further, that an election was held at the time mentioned; that the towns of Sumterville and Leesburg were balloted for for the county seat of said county, and that a majority of the votes cast were in favor of Sumterville; and the County Commissioners duly canvassed the returns of the election and declared Sumterville duly elected the county seat by virtue of the votes cast at said election, all of which was duly recorded in the minutes of Board. In pursuance of the said determination the records and public offices of the county were removed to Sumterville, and remained there until they were removed to the town of Leesburg by virtue of an order of the Judge of the Circuit Court, made at chambers, without notice to the Board of County Commissioners, in March, 1870, which order of the Judge, it is claimed, was of no effect in determining the location of the county seat of said county.

To the amended return the relators demur upon the grounds, 1st, that no due and legal notice of the election is alleged to have been given; 2d, that the answer of the respondents shows that a court of competent jurisdiction adjudicated and determined that the said election, held October 9, 1869, was illegal, irregular and void, and did not effect a change of the county site, which judgment was not vacated, reversed or rescinded, and is now conclusive; 3d, that the act of 28 January, 1869, Chap. 1695, under which the alleged election was held, is unconstitutional and void, being in conflict with Section 16, Article XVI, of the Constitution.

Respondents joined in demurrer, and the questions raised were argued and submitted.

As to the first ground of demurrer, it is claimed by re-

536 SUPREME COURT.

The State ex rel. v. Co. Com'rs Sumter Co.—Opinion of Court.

lators that the notice of the election alleged to have been given by written notices posted in public places in the county were not lawful notices, because the law of the State required such notices to be published in newspapers. Chapter 1656, Laws of 1868, being "An act to provide for the publication of laws and of official and legal advertisements," and Chapter 1697, Laws of 1869, amendatory of the fourth section of the former act, provide that one or more newspapers shall be designated by the Circuit Judge in which all legal notices required by law to be published shall be printed, and that no legal notice shall be valid unless the same be published in the paper so designated. By Section 1 of an act approved February 2, 1869, (Ch. 1700,) all the sections of the law requiring the designation of newspapers and the publication of notices therein were repealed. The second section revives the law in force prior to the passage of the sections so repealed. Assuming the act of 1868, Chapter 1656, to have been valid, (and we see no reason why it was not, though its validity is attacked by respondents,) the repeal took effect before the proceedings in controversy occurred, and it follows that there was no law existing at the date of the proceedings requiring the notice of the election to be published in a newspaper.

Relators urge that the repealing act is without validity, because it repeals a portion of an act and revives former laws without re-enacting at length the act as amended or the laws revived, which, it is claimed, is necessary according to Section 14, Article IV, of the Constitution, which provides that "no law shall be amended or revised by reference to its title only; but in such case the act as revised or section as amended shall be re-enacted and published at length." This repealing act amends the act of 1868 by striking out certain sections designating the act by its title and by its date; it does not purport to amend any section;

does not attempt to *revise* any law or to create any new law, except to *revive* what may have been displaced by the section now repealed. Hence the section of the Constitution cited does not support the argument. It cannot be well urged that a repealed law may not be revived without re-enacting it at length, because there is nothing in the organic law prohibiting such legislation.

But it is claimed that the section reviving the former law is vicious, because there was no act of the kind to be revived, and hence it is uncertain and vague; that it substitutes nothing in the place of the repealed section, though purporting to do so, and thus leads to confusion and uncertainty, and vitiates the whole act. We do not so view it. Certainly it repeals certain sections. There is no confusion following that. Then it revives " the law in force prior to the enactment " of these sections, the effect of which is to restore any common or statute law rules on the subject of giving notice or making known to the public an official order, if any such rule existed. Publication is generally defined to be opening, exposing, making publicly known or giving opportunity therefor in matters of this kind, according to the customary method and the facilities existing, and does not necessarily mean that newspapers must be employed.

We discover nothing to impeach the constitutionality of the repealing act. The return shows that notices in writing were posted in several public places in the county thirty days before the holding of the election, and this must be deemed sufficient notice.

The second ground of demurrer is that the effect of the election of October 9, 1869, has been adjudicated by a court of competent jurisdiction, which judgment has not been vacated or reversed, and that the matter is therefore *res adjudicata*, and the doors are closed against further inquiry.

We said on a former occasion that we could not regard the order of the court referred to as having any effect in determining the location of the county site of Sumter county. The public records and archives of the county had been removed to Sumterville in pursuance of the result of the election and the act providing therefor, by the proper officers. Two months after this occurred a bill in equity was presented to the Judge of the Circuit praying for a decree declaring the town of Leesburg to be the county site of said county, and a mandamus requiring the county officers to remove all their books and records to the town of Leesburg, and all courts to be held at Leesburg. The Judge at Chambers, without notice to the parties, ordered " that all the officers of the county of Sumter who are required by law to have their offices at the court-house, be and they are hereby commanded to remove all books, papers, records and everything appertaining to their offices to Leesburg, the county site, and that all courts required by law to be holden at the county site of Sumter county be held at the said town of Leesburg."

This order was made before the issuing of process upon the bill, without notice to any of the parties and without opportunity to be heard in opposition thereto, and no final decree or order was afterward made in the case. Nor can we discover what ground was laid for the exercise of jurisdiction by a court of equity. And certainly no alternative or peremptory writ of mandamus was issued. It cannot be sincerely urged that the rights of the people of Sumter county were determined without notice and without any final adjudication by any of the methods known to the law.

The third ground of demurrer is that the act of January 28, 1869, (Chapter 1695) is not a constitutional law, because the fourth section declares that " the place receiving

a majority of the number of registered votes shall be the county site;" whereas the Constitution by Section 16, Article XVI, prescribes that "a plurality of votes given at an election by the people shall constitute a choice when not otherwise provided by this Constitution." There is nothing in the instrument relating to elections to be held to determine the choice of the people as to the location of county sites, and it is at least doubtful whether this section was intended to apply to any election other than for the choice of officers; and it is reasonable to suppose that in the choice of a place which would be most convenient for the people to transact their county business the wishes of a majority of the voters who felt an interest in the matter should be consulted, rather than that a small minority of the whole, in a contest between half a dozen or more localities, should prevail. This was evidently the view of the Legislature, and its construction is entitled to great consideration. But if it be conceded that a plurality vote in such cases constitutes a choice, we might then consider whether the Legislature in using the word "majority" intended anything more than the greatest number of votes. But considering the nature of the subject the most reasonable conclusion is that adopted by the Legislature, that the section of the Constitution referred to had no reference to this method of ascertaining the wishes of the people in respect to locating county sites, the only elections mentioned in the Constitution being elections of officers by the people and by the Legislature, and elections respecting changes in the fundamental law.

The term "majority of registered votes" as used in the act (Chap. 1695, Sec. 4) must be construed to mean a majority of those qualified electors who vote at the election, and not a majority of all who had the right to vote. Everett vs. Smith, 22 Minn., 53; 10 Ib., 107; 16 Ib., 249.

If it had been intended that a majority of all the qualified voters of the county, as shown bv the registration lists, should be necessary to a choice, the Legislature would have so declared, which it did not.

Says Bouvier: "The intended signification is generally denoted by the context, and where it is not the second sense is generally intended; a majority on a given question being more than one-half the number of those voting." Those who are silent are supposed to assent that the question shall be determined by those who vote. Abbott's L. Dict.

The demurrer of the relators to the amended return is overruled. The relators have leave to traverse the return as to matters of fact and serve a copy of such traverse upon respondents on or before the 15th day of December next, otherwise final judgment will be entered upon the demurrer. All issues must be made and filed within twelve days after traverse.

On the 14th of December, 1882, the relators filed the following " traverse ":

And now in pursuance to the order of said court in said case come the relators, by their attorneys, and to the answer and amended answer of the respondents traverse the same and say:

1st. That it is not true, as the relators are informed and believe, that the petitions filed September, 1869, was for a *change* of the location of county seat, but said petitions were insufficient and did not authorize the then Board of County Commissioners to order an election to locate the county seat.

2d. That there was no sufficient notice of said election.

3d. That at said election there was not cast a majority of the registered votes of said county for Sumterville, as

JUNE TERM, 1882. 541

The State ex rel. v. Co. Com'rs Sumter Co.—Opinion of Court.

required by act of the Legislature, Chapter 1695, Section 3 ; nor did a majority of the registered voters cast their votes for Sumterville, as required by said act.

 4th. That the order of the Judge of the Circuit Court in and for Sumter county of March 7th, 1870, (set out in said answer,) was made after notice to the then Board of County Commissioners, and after said Board, by their attorney, had appeared in open court and argued said cause. The said order was announced as a temporary order, to hold until the defendants could demur, plead or answer.

That said order was not appealed from, but the defendants filed their answer in said case ; that in said case there was made and signed a *final decree* after the defendants had answered and admitted certain facts ; that said final decree was made and signed at a final hearing of said case upon notice, and either handed to complainants' attorney or forwarded to the Clerk of the court ; that said final decree held that Leesburg was then the county site of Sumter county, and that the public records of said county, &c., should be at Leesburg, and that the election of 1869 effected no removal of the county site ; and said final decree was known to the then Board of County Commissioners and acquiesced in by them until October, 1881, more than twelve years afterwards ; that no appeal was taken from said final decree.

On the 21st of the same month the respondents filed a joinder of issue on the first paragraph and demurrer to the 2d, 3d and 4th paragraphs of said traverse.

At the January Term, A. D. 1883, the relators moved for leave to withdraw the joinder in issue heretofore filed by said respondents to the traverse of said relators of the amended return of said respondents, and that said traverse be stricken from the file on the ground that it presents no traversable allegation upon which respondents can or should

be required to take issue, and for judgment final upon the demurrer of said relators to said respondents amended return, and on consideration of the motion the following judgment was entered :

And now again come the respondents, by their attorneys, and move the court to strike from the file herein the paper purporting to be a traverse of the respondents amended return filed by the relators herein, and it appearing to the court that due and legal notice of said motion, and of the time for hearing the same, and the grounds thereof, have been served upon said relators ; and it now appearing to this court that said paper, purporting to be a traverse, tenders no issuable allegation upon which said respondents can or ought to be required to take issue, and that it is wanting in certainty ; It is therefore ordered and adjudged that said paper purporting to be a traverse be stricken from the file. It is further considered that the peremptory writ is denied ; that the respondents go hence without day, and that they recover of the relators their costs by them about their defence in this behalf expended, taxed at the sum of thirtynine dollars and seventy-seven cents.