STATE, EX REL. C. B. McCLENNY, VS. THE COUNTY COMMISSIONERS OF BAKER COUNTY.—MANDAMUS.

1. The election contemplated by the statute regulating a change in the location of a county site is an election at which the voters of the county may vote for any place within the county ; and where the election as prayed for in the petition and ordered and given notice of, is one as between two particular and specially designated places, it is contrary to the policy of the statute and illegal.

2. Though County Commissioners will not be controlled in their discretion as to the character of the courthouse or jail or offices which it is made their duty to erect or provide under the above statute, yet where they refuse to perform these duties, mandamus will lie to compel them to act, or to set them in motion.

3. The omission of inspectors of an election to take the oath prescribed by law, or their being improperly sworn, does not invalidate the election or the votes cast at such precinct, or the return thereof.

4. Illegal votes do not invalidate legal votes when the number of the former is ascertained.

5. Whether a person who has given a bond conditioned to erect at his own expense public buildings at a certain place, should it receive a majority of the votes as the county site, and to convey the buildings and certain lands to the county within a certain time, can ask, as relator, that a mandamus issue to compel the County Commissioners to erect said buidings—*quere ?*

This is a case of original jurisdiction.

Upon the filing of respondents' return to the alternative writ, the relator moved that the alternative writ be made peremptory. The bond of relator referred to in the opinion was made by him to the County Commissioners of Baker county, and was conditioned as follows :

" The condition of this obligation is such that whereas sundry citizens and registered voters of said Baker county have presented a petition for an order for an election for the purpose of voting upon the question of change in the location of the county site of said county; now, if the said county site is lawfully removed by said election to the town of McClenny, (unincorporated,) and if the said McClenny shall within six months therefrom cause to be erected at said McClenny suitable buildings for the purpose of the county, equal at least in value to the county buildings at Sanderson, and shall thereupon execute to the people of said Baker county a warranty deed to and for said buildings completed, and sufficient land surrounding the same, free of any charge, expense or cash to the county of Baker, or the people thereof, then this obligation to be void, else in full force and effect; and the said C. B. McClenny does hereby renounce forever any claim or right of any kind in,

to or upon any of the county property, either land or buildings at Sanderson, but expressly requests and earnestly asks that said property be sold for the purpose of aiding to pay the costs of a new jail for county purposes, at the county site, if changed."

The other facts of the case are sufficiently stated in the opinion.

*H. Bisbee, J. A. Henderson* and *Hartridge & Young* for Relator.

*B. H. Palmer* and *C. P. & J. C. Cooper* for respondents.

MR. JUSTICE RANEY delivered the opinion of the court:

The view we take of this case makes it unnecessary perhaps to discuss but one point arising upon the motion of the relator for a peremptory writ.

I. The return, with its exhibits, shows that one of the petitions presented to the Commissioners prayed for "a change in the location of the county site from Sanderson to the unincorporated town of McClenny," and the others prayed the Commissississioners "to order an election at the several precincts in such county for the location of the county site at and in the unincorporated town of McClenny," the location of the town being given in each. At a meeting of the Commissioners, held on the 14th day of December last, it was "ordered that the petition be granted," and Tuesday, January 26th, 1886, was appointed as the day for holding the election, and inspectors of election for the several precincts in the county were appointed. The return states that the only notice of the election was given by the sheriff and that it was a publication for thirty days of the above order.

It is clear that the election prayed for and ordered, and given notice of, was one as to whether Sanderson should continue to be the county site, or the county site should be changed or removed to McClenny. The statute provides that the place receiving a majority of the number of votes cast at such election shall be the county site " for ten years." The purpose of the statute is that when an election is held under it the several voters of the county shall have the right to vote for any place in the county they may respectively deem the best place for the county site. The election to be ordered is " for the location of the county site " of the county and not merely whether it shall be removed to a named particular place or remain where it is. No such limited issue is to be submitted to the people. It is not contemplated that any voter shall be restricted either by the petitioning voters, or by the County Commissioners, to voting for one of any two or more particular places, and any election in which such restriction is made is entirely contrary to the spirit and purpose of the act. It is clear that no election has been ordered which called for an expression from the voters of Baker county of their choice as to which, of all points, places or localities in it, the county site should be changed to. It will not do to say that the voters could have voted for any place other than Sanderson or McClenny. No such election was called, and it cannot be assumed that it was understood by the electors to be any election other than as between Sanderson and McClenny. It is a fact that in the case of Lanier vs. Padgett, 18 Fla., 842, an election was held, and Sumterville received a majority of the votes over Leesburg, the then existing county site, and no fraud was alleged in the election, yet as the petition did not ask a change of location the election was declared to be illegal, and this, too, although it appears that the order was

for an election *locating the county site* as contemplated by the statute. In State ex rel. vs. County Commissioners, 19 Fla., 531, it appears that a large vote was polled at this election. The doctrine of these cases is that the provisions of the act in question should be strictly observed. 19 Fla., 532, 533. When an election of this kind is to be held, fairness, and a proper enforcement of the law, require that nothing should be permitted so fully calculated to mislead the electors as to their rights, or in such patent antagonism to the true spirit of the law. Suppose that there was a similar act to the one before us for a change of location of the State Capital, substituting the voters of the State and the Governor, for the voters of the county and the County Commissioners, and upon a petition praying for a change of location from Tallahassee to, say, Pensacola, or any other particular place, the Governor should issue his proclamation for an election on a certain day as between these two places, and no other places should be voted for, could it be pretended that an election contemplated by law had been called, or that a legal expression of the popular will as to which of all the towns and cities in the State should be the Capital, had been obtained? Should such an election be held to be a bar for the period of "ten years" or any time, to a subsequent election at which the voters of the county or State had been left untrammeled to vote for any place, and had actually by a majority vote selected a third place? We think not. We think that when an election is held under this act the people should be guarded against being misled. No such election as the statute contemplates has been either asked for, ordered or noticed, and believing it to be illegal and not in conformity to law we do not think that it should be recognized by the courts.

We find, it is true, cases where the places to be voted

for have been named in the order, or notice of election, but in none of them was this question raised. Yet in one of them it was pursuant to a constitutional provision, and in the other the places named were, by the result of a previous election, the only places which could be voted for under the peculiar provisions of the statute. 5 Neb., 146 ; Compiled Statutes of Neb., 173, 174. Considering the real purpose of the act, and the permanancy of location following the result, we are satisfied that the construction we have adopted is not only consistent with the spirit of the previous decisions of this court, but that it is the only proper one to be placed on the statute.

Though the above would seem to us to dispose of the case there are other points which it may be well to notice.

II. Though County Commissioners will not be controlled by mandamus in the exercise of any discretion as to the character or style of the court house or jail they should erect or of the offices they should provide, yet when the duty of erecting such buildings or providing offices is imposed by law, and these or similar officers refuse to act, it is the proper function of this writ to compel them to proceed in the execution of the duty or to set them in motion. Commonwealth vs. Sessions, 2 Pick., 414 ; People ex rel. vs. LeSalle County, 84 Ill., 303 ; 57 Ill., 307 ; Manor vs. McCall, 5 Geo., 522 ; High on Extra. Rem's., §34 ; Dillon on Municipal Corporations, §832. Statutes imposing such public duties would become of little moment if the officers appointed to execute them could say that the execution of them was a mere matter of their discretion. It is not to be assumed that there is no means of performing them. The authorities cited illustrate how far the courts will go in compelling action.

III. The fact that inspectors of election were not sworn, or were sworn improperly, does not invalidate the election,

or the votes cast at the precinct, nor the return of such inspectors. This is too well settled to require the collation of authority. It is equally well settled that when both legal and illegal votes are cast at a precinct, and it can be ascertained how many there are of each, that the latter do not affect the former, nor does a number of illegal votes not sufficient to destroy the majority otherwise existing change the result of an election.

IV. Upon the authorities cited it does not seem that the fact of the bond executed by the relator having been given would of itself invalidate the *election*. Dishon vs. Smith, 10 Ia., 212; 10 Wis., 213 ; Attorney-General vs. Supervisors, 33 Mich., 289; whether, however, the Commissioners should be required by a court at *his* instance to *erect* such *buildings*, or to do so at all within the six months in which he undertakes to erect buildings, &c., are questions upon which we do not pass. We are very much inclined to think that it should at least not be done at the instance of the present relator. Yet we do not mean to intimate that he would ask for its being done at public expense upon its inconsistency with the terms of his bond being called to his attention.

V. We do not think it improper to say that, should there be another election upon that question, the County Commissioners should in their canvass of the votes declare what place receives the majority of the votes cast *as shown by the returns*, and that it is the county site of the county and thereby declare the result of the election as shown by the returns. Such was done in Sumter County, (19 Fla., 535,) and we have seen no authority and know no reason why it should not be done.

The motion is denied.