QUESTIONS: 1. What is the status of the "Florida Wing" of the Civil Air Patrol with respect to the appropriation of public funds of the state? 2. What are the duties of the Department of Military Affairs with respect to the appropriation made by Item BF of s. 5, Ch. 74-300, Laws of Florida? 3. Do the provisions of Ch. 74-333, Laws of Florida [s. 252.55, F.S. (1974 Supp.)], make such showing of a "clearly identified and concrete public purpose" as a primary objective of the appropriation authorized by that act and such showing of a "reasonable expectation that such purpose will be substantially and effectively accomplished" as to be sufficient for the disbursement to the Florida Wing of the Civil Air Patrol of public funds of the state? 4. Does the provision of Art. VII, s. 10, State Const., relating to the use of the state's taxing power to aid any corporation, association, partnership, or person permit the disbursement of funds to the Civil Air Patrol under authority of Item BF, s. 5, Ch. 74-300, Laws of Florida, or Ch. 74-333, supra, or both? 5. Do the agreements of the Florida Wing of the Civil Air Patrol to participate in the providing of services by agencies of the state other than the Department of Military Affairs provide in any manner a legal basis for the disbursement of state funds to the Florida Wing under either or both of the acts referred to above?
SUMMARY: State funds may be appropriated for the use of a quasipublic corporation, such as the Florida Wing, Civil Air Patrol, in carrying out a public purpose under appropriate controls. The funds appropriated to the Department of Military Affairs for the use of the Florida Wing, CAP, are to be disbursed by the department for purposes authorized by Ch. 74-333, Laws of Florida, and in accordance with the procedures prescribed by law for the disbursement of general revenue funds. AS TO QUESTION 1: The Civil Air Patrol (the CAP hereafter) was chartered by a special act of the United States Congress and serves as a civilian auxiliary of the United States Air Force. It, therefore, has the "status" of a quasi-public corporation; and, as such, state funds may validly be appropriated for its use in carrying out a state purpose or function under appropriate controls. See Burton v. Dade County,166 So.2d 445 (Fla. 1964); Raney v. City of Lakeland, 88 So.2d 148
(Fla. 1956); Bailey v. City of Tampa, 111 So. 119 (Fla. 1926); cf. O'Neill v. Burns, 198 So.2d 1 (Fla. 1967). Accord: Attorney General Opinion 072-82, ruling that state funds may lawfully be appropriated for the use of the Florida Wing of the CAP in connection with the air rescue operations of the Department of Transportation. AS TO QUESTION 2: Section 5 of Ch. 74-300, Laws of Florida (the General Appropriations Act of 1974), appropriated "the following amounts to the following departments contingent upon the passage of implementing legislation." Among such contingency appropriations was Item BF, which appropriated $50,000 to the Department of Military Affairs, "[c]ontingent upon passage of HB 3839 or similar legislation." The implementing legislation, HB 3839, was adopted as Ch. 74-333, Laws of Florida. After describing the public service to the State of Florida performed by the Florida Wing of the CAP, this act provides that $50,000 "shall be appropriated annually from the general revenue fund for the purpose of the acquisition, installation, conditioning and maintenance" of the Florida Wing of the CAP, with certain limitations, including a limit of $15,000 during any one year for the purchase of "aircraft." Assuming arguendo that the Legislature could validly make a lumpsum appropriation to a quasi-public corporation for carrying out a designated public purpose without, at the same time, providing some method of public control over the expenditures of the public funds, cf. O'Neill v. Burns, supra, it is clear that it has not done so. The funds were appropriated by Ch. 74-300 to the Department of Military Affairs for the uses and purposes set forth in the implementing legislation, Ch. 74-333, supra. (It might be noted that the department is responsible for, inter alia, the operations of the Florida Air National Guard and, presumably, is in a knowledgeable position to monitor the expenditures of state funds for one or more of the purposes authorized by the implementing legislation, such as the purchase of "aircraft" and the financing of a cadet flying training program.) And the department has the same "duty" with respect to the disbursement of the CAP funds as it has with respect to the other general revenue funds appropriated to it by Items 817- 821 of Ch. 74-300, supra, for carrying out its purposes — that is, the appropriate official of the department must authorize the expenditure for a purpose authorized by law (by Ch. 74-333, as to the CAP appropriation) and the disbursement must be made in accordance with the procedures prescribed by law, Ch. 216, F.S., for the disbursement of general revenue funds. AS TO QUESTION 3: The statements quoted in this question appear in the opinion of the Florida Supreme Court in the O'Neill case, supra, 198 So.2d at p. 4, in which the court struck down a statute appropriating $50,000 from the General Revenue Fund to the Board of Commissioners of State Institutions "to be paid to junior chamber international for the creation of permanent headquarters in the state of Florida, . . . ." The appropriation was invalidated on the grounds that any benefit to the public from the expenditure in question was only incidental and no "semblance of control" of the contemplated property was retained in the state. As noted above, the Legislature described at some length in the implementing legislation, Ch. 74-333, the public services performed for the people of this state by the CAP; and, generally, it is the Legislature's prerogative to decide what is a public purpose for which state funds may be spent. See 81 C.J.S. States s. 133, p. 1149; State v. Florida State Racing Commission, 70 So.2d 375, 380
(Fla. 1953); AGO 071-28. The Legislature's determination in this respect will be accorded "great respect" by the courts when challenged in an appropriate proceeding. See Daytona Beach Racing Rec. Fac. Dist. v. Paul, 179 So.2d 349, 355 (Fla. 1965). And as noted in the very early case of State v. County Commissioners of Sumter County, 19 Fla. 518, 531 (Fla. 1882),
No rule of construction is better settled in this court, both upon principle and authority, than that the acts of a state Legislature are to be presumed constitutional until the contrary is shown. Accord: Evans v. Hillsborough County, 186 So. 193, 196 (Fla. 1938); Capelouto v. Orkin Exterminating Co., 183 So.2d 532 (Fla. 1966). AS TO QUESTION 4: As indicated in my answer to question 1, the Florida Supreme Court has many times approved the disbursement of public funds to a quasipublic corporation to carry out a predominantly public purpose as against an attack on the constitutional grounds now appearing in Art. VII, s. 10, State Const. AS TO QUESTION 5: The assistance rendered to the people of this state during "natural disasters" is mentioned in Ch. 74-333, Laws of Florida, [s. 252.55, F.S. (1974 Supp.)], as one of the public purposes served by the Florida Wing of the CAP in this state. Thus, agreements such as that between the CAP and the Florida State Division of Disaster Preparedness concerning the utilization of their respective personnel and facilities during a declared emergency would be relevant to the question of whether the funds appropriated for the use of the Florida Wing, CAP, would serve a predominantly public purpose.