## MARSHALL AND OTHERS *v.* BARCLAY AND OTHERS.

Under the act of Congress of the 2d of March, 1799, the United States are not entitled to a preference in the payment of bonds given for duties, over the general creditors of the debtor, unless the debtor is actually insolvent, and his insolvency is manifested by some notorious or public act.

To entitle the United States to this preference, on account of a voluntary assignment of the property of the debtor for the benefit of his creditors, it must appear that the assignment was of all the property of the debtor, or was made with a view to defeat the claim of the United States.

Where, however, a debtor is actually insolvent, and intending to assign his whole property, first makes an assignment of part for the benefit of some of his creditors, and afterwards makes another assignment of the residue of his property for the benefit of his remaining creditors, the two assignments will be considered as one transaction, and the United States will be entitled to a preference.

ON the 16th July, 1816, John R. Murray and William August 5th. Ogden, merchants in New York, became insolvent, and stopped payment. At that time, they owed several custom house bonds to the United States, which Major and Gillespie had signed as their sureties. Of those bonds, a part were afterwards paid by Major and Gillespie, and six still remain due and unpaid to the United States.

On the 7th of May, 1817, Murray and Ogden conveyed to T. L. Ogden and B. W. Rodgers the bulk of their real estate, in trust for the equal benefit of all their creditors; and *on the 17th of the same month, the United States recovered judgments against them and their sureties on the custom house bonds. On the 28th of January, 1818, Murray and Ogden assigned all the rest of their property to W. Bayard and H. Barclay, in trust for their creditors generally, provided they should, within nine months, execute releases of their respective demands, and the dividends of those who should refuse, to be paid to the assignors; and on the 11th of November, 1819, they executed an assignment of the dividends for the benefit of those who had not released; provided they should come in and release

[*160]

1828.

Marshall
v.
Barclay.

prior to the actual payment of the first dividend of their estate. In July, 1820, they applied for the benefit of the act to abolish imprisonment for debt in certain cases, and in October thereafter were discharged, and assigned all their property to Bayard and Barclay, who were appointed their assignees under the act; and on the 21st December, 1820, T. L. Ogden and B. W. Rodgers, together with Murrray and Ogden, by an instrument which recited the previous assignment, for the more prompt and easy distribution of the funds of the estate, released and conveyed to Bayard and Barclay, the assignees under the act, all the property that had been conveyed and assigned to them for the benefit of the creditors of Murray and Ogden generally. In January, 1821, Major and Gillespie assigned all their estate to the complainants, Marshall, Schmidt and Selden, for the benefit of their creditors, and shortly thereafter, Gillespie died intestate.

William Ogden is dead, and the bill has been taken *pro confesso* against his administrator. W. Bayard died after he had answered the bill, and it has been revived against his executors. Henry Barclay, the surviving trustee, has paid into court $12,650, and has in his hands a further sum belonging to the estate.

*B. Robinson,* for complainants.

*T. L. Ogden,* for defendants.

*J. Duer,* district attorney, for U. S.

THE CHANCELLOR:—The question presented for the court to determine is, whether, under the act of the 2d of March, *1799, the United States, and the complainants as the assignees of Major and Gillespie, are entitled to a preference in payment of the amount of the bonds which are still due to the United States and those paid by the sureties, over the general creditors of Murray and Ogden. By the 65th

[*161]

section of that act, (1 Graydon's Dig. 173,) the United States are entitled to a priority of payment, on bonds for duties, in all cases of insolvency, or where any estate in the hands of executors, administrators or assignees, shall be insufficient to pay all the debts due from the deceased. In another part of the same section it is declared, that the cases of insolvency therein mentioned shall be deemed to extend to cases in which a debtor, not having sufficient property to pay his or her debts, shall have made a voluntary assignment thereof for the benefit of his or her creditors.

In *Prince* v. *Bartlett*, (8 Cranch. Rep. 431,) the Supreme Court of the United States decided, that to give a preference, it must not only appear that their debtor was actually insolvent, but that such insolvency should have been manifested by some notorious or public act;[1] as that he had made a voluntary assignment of his property for the benefit of his creditors, or that his property had been attached as the effects of an absconding, concealed or absent debtor. In that case, although the debtor was actually insolvent, and his property had been attached by a particular creditor to satisfy his private debt, agreeably to the laws of Massachusetts, it was held, that the United States were not entitled to any priority, and that the attaching creditor had a lien on the property attached, which could not be defeated by the process subsequently issued in behalf of the United States. And in the case of *The United States* v. *Hooe*, (3 Cranch, 73,) the same court decided, that to give a priority on account of the voluntary assignment of the property of the debtor for the benefit of his creditors, it must appear that it was an assignment of all the property of the debtor, or that it was made for the purpose of evading the claim

[1] *United States* v. *Munroe*, 5 Mason, 572; *United States* v. *Howland*, 4 Wheaton, 108; *United States* v. *Bank of the United States*, 5 Rob. (La.) 262; *Dias* v. *Bouchard*, 10 Paige, 445; *Conard* v. *Atlantic Ins. Co.*, 1 Peters, 386; Story, J., id. 439.

1828.

Marshall
v.
Barclay.

of the United States. (See, also, *Thelusson* v. *Smith*, 1 Peters' C. C. R. 195; *United States* v. *King*, Wallace's R. 13.)

*In the case of *Downing* v. *Kintzing*, (2 Serg. & Rawle's R. 326,) it was decided, that where a man, who was actually insolvent, and has stopped payment, and with a view of assigning his whole property, made an assignment of a part, for the benefit of some of his creditors, and afterwards made an assignment of the residue, for the benefit of his other creditors, the two assignments were to be taken together, and considered as one transaction, and that the United States were entitled to a priority. That case was undoubtedly decided on the principle that the intention of the debtor, at the time he made the first assignment, was to transfer the whole of his property for the benefit of his creditors; and the circumstance, that the assignments were in separate instruments, and executed on different days, was not permitted to change the rights of the parties from what they would have been if the assignments had been executed at the same time and by a single instrument.

In the case before me, if I could come to the conclusion that it was the intention of Murray and Ogden to assign all their property for the benefit of their creditors, at the time they assigned their real estate to Ogden and Rodgers, it would come within the principle decided in the case of *Downing* v. *Kintzing*. But there is no evidence of any such intent in this case. I do not find it alleged in the complainants' bill; and the answer of Murray to that part of the bill which charges the assignment to have been made for the purpose of defeating the judgments, expressly denies, that at that time they knew or believed the firm was insolvent. That there could not have been any intention of defeating the priority of the United States, appears from the answers of Murray to the original bill, and to the bill of revivor and supplement, in which he swears, that at the time of the first assignment, he supposed they had made ample provision for the payment of all the bonds due from

them for duties, and for which Major and Gillespie were holden as sureties.

I have, therefore, brought myself to the conclusion, that the assignment of the real estate to Ogden and Rodgers did not entitle the United States, or Major and Gillespie, to a priority, and that the subsequent assignments cannot alter the rights of the parties in respect to that fund. By the assignment *of the lands of Murray and Ogden to trustees, for the benefit of all their creditors, those creditors did not obtain a general, but a specific lien on the lands conveyed, for the payment of their debts, and which could not be divested by any subsequent act of their debtors. As to the property assigned to Bayard and Barclay on the 28th of January, 1818, and in October, 1820, there can be no doubt of the right of the United States to a priority, or of the right of the complainants, so far as the bonds have been paid by Major and Gillespie, or either of them. For the purpose of ascertaining the rights of the respective parties, it will be necessary, in addition to the accounts directed to be taken by the order of the 1st of April, 1828, that an account should be taken of the several persons who were creditors of Murray and Ogden at the time of the assignment of the real estate, and of the amount that is now due to each, including the amount due to the United States on the unpaid bonds and the amount which is due to the complainants as assignees of Major and Gillespie, and distinguishing in that account between what is due on account of bonds paid by Major and Gillespie, and what is due on account of any other dealings between them and Murray and Ogden. And the Master must deduct from the amount paid by Major and Gillespie towards the custom house bonds, any sums which were received by them on account of funds or property placed in their hands specifically for the purpose of being applied to the payment thereof. On the coming in and confirmation of the master's report, under the order of the 1st of April last, and under the decree now to be entered, a proportional part of the costs of

all the parties to this suit, must be paid out of the funds in the hands of the assignees arising from the first assignment, and the residue out of the fund arising from the other assignments. The fund arising from the first assignment must then be distributed ratably among the creditors for whose benefit the assignment was made, including the United States and the complainants. And out of the funds in the hands of the assignees arising from the other assignments, the United States will be entitled to a priority in payment, for the balance which may be due them, and

[*164]

which shall not be paid out of *the funds arising from the first assignment. The assignees of Major and Gillespie will next be entitled to be paid out of the same the balance due on account of the surety bonds, which they have not received out of the other fund. After that, if any thing remains, the creditors generally will be entitled to payment out of the same ratably, and including any balance that may still be due to the assignees of Major and Gillespie, on any other account than that of the custom house bonds.