23    419
29     63

F. M. DOUGLASS ET AL., APPELLANTS, VS. THE COUNTY COMMISSIONERS OF BAKER COUNTY, APPELLEES.

1. The rule that an injunction should not be dissolved until all the defendants have answered, is not inflexible, but has several exceptions.

2. Where four of the members of the Board of County Commissioners are defendants to a suit in chancery, and two of them having answered, move to dissolve the injunction, and the motion is heard without objection from the complainants as to the absence of an answer from the others, and the answering defendants appear to have had the same opportunities as the other for knowledge and understanding of the transactions, and show clear grounds for the dissolution of the injunction, it is not error to dissolve the injunction.

3. Several copies of the same form for a petition for a change of location in the county site were circulated in the county and signed by different electors.   After they had been signed the signatures

to all the petitions but one were cut off and attached to the one, and it, having its original and the attached signatures, was presented to the Board of County Commissioners, who at a subsequent meeting ordered an election for the location of the county site. The irregularity as to the petition was understood by them before making the order. No fraud was shown: *Held,* That the irregularity did not invalidate the election.

4. A special or called meeting of the County Commissioners in which all the members participate, held before the day to which they had adjourned at their preceding meeting, is valid.

5. When the record of the County Commissioners shows that a petition was presented for a change of the location of the county site of the county, and the same petition is subsequently referred to as one asking for an election to be ordered as the law directs for the removal of the county site, and an order was made that an election take place on a certain day, the order should be construed as one for an election at which the electors may vote for any place in the county as the county site, including the existing location of it, and should consequently be held valid.

6. An offer by a private party to build a court house at a particular place in the county without expense to the county, if the electors should vote to locate the county site there and the subsequent performance of such offer, do not invalidate the election of such place as the county site of the county.

7. It is not essential to the validity of an election for the location of a county site, or to the canvass of the returns thereof, that the records of the proceedings of the County Commissioners at the time of canvassing the returns, should show that evidence was produced before, or asked for by, the commissioners, that due notice of the election was given.

Appeal from the Circuit Court for Baker county.

This is a bill in chancery filed by certain citizens of Baker county and praying an injunction restraining the County Commissioners and Clerk of the Circuit Court of the county, who is *ex-officio* Recorder of the county and clerk of the County Commissioners from removing the

county offices furniture, records, etc., from Sanderson to Macclenny, in said county.

The election was held as to changing the location of the county site, which has for a long time been at Sanderson. The order for the election was made on August 23, 1886, on a petition presented on the second day of that month, and the election was held on the 30th day September. On the 5th day of October the returns were canvassed by the Commissioners, who declared the result, says the bill, as follows: "We find that for county site of Baker county, Florida, Macclenny received 241 votes, and against removal of county site from Sanderson received 207 votes, giving majority for county site of Baker county, Florida, Macclenny thirty-four votes," This finding is alleged to be signed by the defendants and attested by the clerk. The record of the Commissioners shows also that the meeting was for the purpose of canvassing the vote of election held on 30th of September at the various precincts held in said county, and that the result declared was found upon an "examination of the returns."

The objections urged by the bill to the legality of the election are as follows:

1st. The petition for a change of location of the county site was not signed by one-third of the registered voters, but by only thirty-two. That there were 214 names (besides the 32) signed to twelve separate pieces of paper which were attached to the original petition of the 32, by pasting the same thereto, and the 214 persons never saw the petition of the 32, nor authorized their names to be so attached. It is also spoken of as a "fraudulent" petition.

2d. That on August 2d, 1886, when the alleged petition was presented to the County Commissioners, they adjourned to their next regular meeting without taking final action

on the subject of the petition. That the first Monday in September was the day for their next regular meeting, but instead of waiting until such meeting to consider, and take formal action, they held a " called " meeting on the 23d day of August, and considered a report made by a committee of two of their number appointed at the former meeting to examine the petition and report at the " next meeting," and ordered the election to be held on 30th of September. That the action of the County Commissioners at this so-called meeting was illegal and void and was also a great wrong to the complainants and other citizens of the county and deprived them of being represented and resisting the application for the order for an election.

3d. That the order for the election does not comply with the statute, as it is for the " removal " of the county site, not for " the location of said county site."

4th. There is no entry in the record of the proceedings of the Commissioners that any evidence was ever produced before, or asked for by, the Commissioners showing thirty days notice that the election would be held; and that without such proof as well as proof that all the requirements of the statute had been fully complied with no canvass of the votes or declaration of the result of the election could be made.

5th. That C. B. McClenny, and others living at Macclenny, published to the voters of the county an offer to build a court-house, and a bond to that effect, if said voters would vote to locate the county site at Macclenny, and that by such inducement at least fifty votes were procured for Macclenny as the county site.

On the application for the injunction there was presented to and considered by the Chancellor a petition from the defendant, Pons, duly sworn to by him, stating that he was then Clerk of the Circuit and County Courts,

and as such legal custodian of the records of the Circuit Court, and the Recorder of the county and the legal custodian of the records of deeds and other papers required by law to be recorded ; and that on February 7th, 1887, after the bill was filed and notice given of the application for injunction, the Board of County Commissioners issued an order to the Sheriff to remove the said records and property of the county to Macclenny, and that pursuant to such order the Sheriff did, on said day, remove all the records of petitioner's office as Clerk from deponent's said office, stating that he proposed to carry them to Macclenny, and said Sheriff has refused to deliver them to deponent, and has not returned them to him ; that two of the County Commissioners voted in favor of such order, and two against, and one Charles H. Berry, who had never been commissioned by the Governor as a County Commissioner, voted in favor of the order.

A temporary injunction was granted by the Chancellor.

Two of the commissioners gave notice, by their solicitors, that on a day named they would present their answer and move to dissolve the injunction. The following feature only of the answer need be noticed :

1. It denies that the order was for an election " for the purpose of the removal of the county site," and sets up the action of the commissioners (supporting their answer by certified copies of the record of the proceedings) which shows that a " petition asking for " a change of the " location of the county site " of the county was presented at the meeting of August 2d, and was referred to a committee of two of the board, with the Clerk, to report at the " next meeting of the board," and that the board adjourned to the first Monday in September; that on the 23d day of August, at a meeting at which all the commissioners—

five—were present, (it being, as stated by the minutes, " a
call meeting for the purpose of receiving the report of the
committee appointed at the last regular meeting of the
Board of County Commissioners, for decision as to the pe-
tition presented asking for an election to be ordered, as the
law directs, for removal of the county site,") the committee
reported the required number of the registered voters—
one-third—to be on the petition, and that " the question
being put, it was voted by a majority of the board that the
election be ordered to take place on Thursday, the 30th day
of September next." The inspectors of election were ap-
pointed at the same meeting, and the Clerk ordered to write
notice of the election and have it published thirty days,
as the law directs, in " *The Baker County Star.*" The min-
utes of this day's proceedings are signed by each commis-
sioner, and attested by the Clerk. There is attached to the
answer, as part of it, the publication in *The Baker County
Star*, signed by Pons, the Clerk, and alleged to have been
read by him to the board, and approved by them, and pur-
porting to be by their order at said called meeting. It recites
that a petition was presented to the board on August 2d,
signed by one-third of the registered voters of Baker coun-
ty, " praying for a change of the location of the county site
of Baker county," and the reference to, and report of, the
committee, and that it orders that an election be held in the
several precincts in the county on September 30th, 1886,
" for the location of the county site of Baker county," and
that the publication be made, and states the appointment
of the inspectors, naming them and their precincts. A
notice of election from the Sheriff, addressed to the voters
of the county, is also annexed to the answer as part of it.
This notice recites the presentation to the County Commis-
sioners of the petition " for a change in the location of the
county site, and that an election be held in the several pre-

cincts of said county for the purpose," and that the petition was " granted " by the board and an election ordered on the stated day, and states that an election will be held on the day stated " for the purpose of deciding upon the location of a county site for said county." The notice of the Clerk, and that of the Sheriff, are alleged to have been published in said newspaper—the former for five weeks, and the latter for thirty days—before the election.

2. The facts in regard to the petition are stated to be, that a number of copies of the petition were written out, and for the convenience of the voters several copies were circulated in the several precincts of the county, and when the signatures, which numbered more than a third of the registered voters, had all been obtained, they were all attached to one of the duplicates and so presented to the board, all of which, it is alleged, was well understood at the time by the signers, and by the board. All fraud is denied.

3d. All members of the board were present at the meeting of August 23, and the voters knew it would take place and the purposes for which it would meet some days prior thereto. It was called by the chairman and the members notified in writing. It was called and action taken on the petition at the instance of the opponents of the removal of the county site, the advocates of removal appearing by attorney and opposing action at that time. A majority of the County Commissioners then in office were opposed to removal.

4. C. B. McClenny, since the result of the election was announced, has erected at Macclenny a substantial and commodious court-house and turned it over to the County Commissioners, who selected the lot on which they wished it erected, and told Mr. McClenny to go ahead and build as he

had agreed to do, and the board were proceeding to remove the records when restrained.

5. Defendant, Williams, is not a County Commissioner, his term having expired and C. H. Berry having been on February 2, 1887, appointed as a Commissioner and having qualified as a Commissioner.

Injunction was dissolved and complainants appealed. The other facts are stated in the opinion.

*C. P. & J. C. Cooper* for Appellants.

The first error, as assigned, is that the petition presented was not signed by the parties whose names appear attached thereto.

It is admitted by the answer and the affidavit of Merritt in the record that these names were signed to other petitions than the one presented to the Commissioners. The petition gives the board power to act, it is foundation for jurisdiction. The petition as signed should be before the board, else there is no petition before them " signed by one-third of the registered voters, praying for a change of the location of such county site."

No necessary part of a petition which is to confer jurisdiction or imitate the execution of a statutory power can be supplied by other testimony than the petition itself. Therefore it does not cure this objection, to say that the petitions actually signed were duplicates or copies of the one presented, for it is certain that these copy petitions never were before the board and the statute has not been complied with. Lanier vs. Padgett, 18 Fla., 844–5 ; 10 Ind., 359 ; 8 Ind., 504 ; 32 Me., 566.

The next ground of error is that the order purporting to be an order for an election was made at a " *called meeting*,"

when the board at its previous regular meeting had set the matter for the regular meeting thereafter.

There is no provision of law in this State for "called meetings" of the Board of County Commissioners, and no authority of law in any one to call such meetings. All business must be transacted at a "legal meeting," and where a body of this sort acting in a *quasi* judicial capacity on a question where the power to act is based on written petition in the nature of a pleading, any order which must be acted on by the board as a board should be so acted on at a regular meeting. This proceeding is analogous to a petition to a court for leave to sell land, and where the court has a regular term the order must be made at such term. 2 Ind., 327 ; 8 Ind., 506 ; 10 Ind., 359 ; 3 Blackford, 501 ; 8 Ind., 476.

The next ground of error is that said election was void because the election ordered, as appears upon the minutes of said board, was for "removal of the county site," and not for a "location of county site," as required by law.

The certified copy of the order certainly refers solely to an election for "removal of the county site," and we contend the written minutes of the board in a matter of this *quasi* judicial character is the record of their action which must be accepted in any court as conclusive in a collateral proceeding.

There is no question, if this was the action of the board, that the election is illegal and void, this very point having been decided in the case of McClenny vs. The County Commissioners of Baker county in this court.

The court in that opinion says the order should be one that informs the voters that any place may be voted for at that election, including Sanderson, but this order would limit the question to change from Sanderson or not. Pad-

get vs. Co. Comrs., 18 Fla., 842; State *ex rel.* vs. Co. Comrs., &c., 19 Fla., 532.

As to question of notice of the election we shall submit the record and the newspapers to be filed, if they show such notice as required by law, that objection is of no force. This election was illegal, because the alleged majority was obtained for Macclenny by C. B. McClenny offering to give land and build a court-house at Macclenny, if that place were chosen. We contend this is equivalent to an offer to each voter of his proportion of the taxes he would have to pay to meet these county expenses, if he would vote for Macclenny. The reasoning in the cases that distinguish this from cases where a man offers to perform the duties of an office without compensation, is not sound or satisfactory. In each case there is an offer of a public benefit, and each individual voter gets a proportion of the benefit. 36 Wis., 213, and cases there cited.

The court erred in permitting to be filed and considering affidavits and outside testimony of what the record should properly contain.

The records of Board of County Commissioners cannot be attacked or varied by parol testimony in an incidental collateral manner. In this proceeding their orders are as much a record as though they constituted a court of record. Brenner vs. B. C. and F. R. R. Co., 113 Mass., 56, 57; 102 Mass., 19, 23; 5 Blackford, 325; 7 Ind., 6; 4 Ohio, 79.

The court ought not to have allowed affidavits as to the petition that it was signed by more than one-third, in that the names pasted on the petition were cut from identical petitions.

The petition itself must contain every fact required by statute, to-wit: "it must be signed by one-third the registered voters of the county." The petition presented was not the petition signed by the voters, nor were the peti-

tions actually signed presented at all.    (See authorities cited above.)

There are two objections of practice to the order dissolving the injunction in this cause :

1st. The pleadings showed that the sole relief prayed was the injunction, and if dissolved before a hearing, the injury would be inflicted before a hearing, and a decree in favor of complainants at time of hearing would not give to them the benefit of the decree in full, as a large part of the injury would have been done.

This was a case that demanded investigation, and no decree of dissolution should have been made until all the facts of the action of the board, and the nature of the petition presented to them, had been brought before the court.    Where the court needs further light, it is error to dissolve the injunction.

2d. The respondents introduced new matter to avoid the effect of the charges of the bill, as to the petition, the order of election, the character of the meeting at which said order was made, the publication of election, and many other new matters, which will be found in the record.    2 High on Inj., 1512, 1510; Linton vs. Denham, 6 Fla., 533 ; 10 Paige, 502 ; 2 High, 1472, 1481.

This order of dissolution was made on coming in of the answer of two defendants.

These respondents were sued as a board ; official action as a board was sought to be enjoined.    The answers of two of the commissioners set up a lot of facts disputing the records of the board, and trying to remedy the defects in petition.    The court was entitled to the knowledge of all the commissioners.

The complainants below could not force the other two defendants to answer, as the time for answer had not arrived, and there was no default.    It was error to dissolve

on the answer of two commissioners and on their *motion to dissolve the injunction only as to themselves.* 2 High on Inj., Sec. 1528 ; 1 Paige, 164 ; Coleman vs. Gage, Clarke's Ch., 295 ; 16 Gay, (Mass.) 341 ; 114 Mass., 583.

*Hartridge & Young* for Appellees.

MR. JUSTICE RANEY delivered the opinion of the court :

I. The defendants named in the bill are John C. Williams, William Jennings, William J. Thompson, David H. Rowe and George H. Rice, as County Commissioners of Baker county, and Francis J. Pons, as Clerk and Recorder of the county. The temporary injunction restrained the commissioners from removing the county records, offices, papers, books, furniture, or property of said county from Sanderson, and from holding meetings, or transacting business as County Commissioners, or opening county offices at Macclenny, and enjoined Pons, as Clerk and Recorder, from removing or keeping the records of his office, or opening his office for the transaction of business at Macclenny. Pons answered the bill.

It is objected that the injunction should not have been dissolved on the answer of but two of the commissioners moving to dissolve as to themselves ; and urged that the court was entitled to the knowledge of all the commissioners ; that the complainants could not force the other "two" commissioners to answer, as the time for answering had not arrived.

It is a fact shown by the record, and impliedly admitted by the contention of the solicitor for complainant as to the absence of an answer by the other " two " Commissioners, that only four of the five Commissioners in office at the filing of the bill were made parties. . The term of Williams,

who is a party defendant, had expired, and Berry had been commissioned February 2, which was five days before the bill was filed and seven days before the injunction was granted. Berry is not a party to the bill.

The motion of the answering Commissioners, Rowe and Rice, was not for a dissolution of the injunction merely as to themselves, but is for a dissolution of the injunction granted in the cause.

No objection appears to have been made to a hearing of the motion by the Chancellor on the ground that but two of the four Commissioners sued had answered.

If complainants desired the answer of the other defendants before a hearing of the motion they should have objected to a hearing of the motion until the other defendants had voluntarily answered, or the time had arrived for taking compulsory steps to compel an answer. The rule that all the defendants must have answered is based on the necessity for testing the personal knowledge of all the defendants as a protection to the rights of the complainant. It is not, however, an inflexible rule. 2 High on Injunctions, §1528, *et seq.* ; 1 Paige, 163, and note. One of the several exceptions is that if the answering defendant is able from his own connection with the subject matter and consequent knowledge to lay the facts before the court which show that the complainant has no equity, the injunction may be dissolved without the answer of a defendant on whom the gravamen of the bill rests. Gregory vs. Stillwell, 6 N. J. Eq., (2 Hals) 51. The answering defendants were present at all the meetings, and had the same opportunities as the other defendants for knowledge and understanding of the transactions. They show what the understanding of all the members was as to uniting the several petitions into one. The transcript of the proceedings of the Commissioners is the best evidence of the conclusions

reached by the board. It was clearly shown that the injunction should have been dissolved, as will hereafter appear.

II. The next point to be considered is that as to the petition for the election and the signatures thereto. The statement of the answer as to this point (see §2 of the answer of the statement) are positive and sworn to be true. In support of this explanation, the affidavit of J. D. Merritt, used on the motion to dissolve, states that a number of copies of the petition, all prepared by him, and all true and correct copies or duplicates of each other were for convenience circulated among the voters, and after all the signatures were obtained, they were all attached by him to one of the duplicate copies and so presented to the board ; that he offered to the board to make an affidavit if they desired that each and every one of the signatures was cut off from a heading exactly like that presented to the board. That the offer, as well as one as to proof of genuineness of marks of persons signing by mark, was refused by the board, they remarking substantially " no, you need not do this, we are satisfied that the signatures are all right," and that " all the headings are like this one ;" that some or all the complainants and a large number of voters opposed to a change of location were present in the room at the time and made no objection to receiving the petition or to its genuineness. The positive statement of the sworn answer and of this affidavit, and of the fact that the petition was referred at this meeting to a committee for examination and report, and that they reported favorably upon it, making no objection thereto, and the board accepted the same as sufficient are clearly sufficient to overcome the charges of the bill and satisfy us that though an irregularity was committed, there was no fraud in it, nor was it of such a character as to invalidate the petition or the proceedings thereon.

III. There is no statute in this State which prescribes the time for meetings of the County Commissioners for transaction of general business unless the statute in Thompson's Digest, pp. 126, 127, is still in force and applicable to the Boards of Commissioners as now constituted, and if so there is nothing in it inconsistent with the conclusions we reach on the point now under consideration, for under it the president of the board, as now organized, or any two members, may call a meeting, and the presence of three alone is necessary to its validity. Canova vs. Commissioners, 18 Fla., 512. The statute as to changing the location of county sites prescribes no time for holding a meeting for action under it. It has long been the custom of such Boards of Commissioners in this State to have a stated day in each month for regular monthly meeting, and also to hold special meetings at other times when the public interest seemed to demand. The practice violates no statute, but is both wholesome and often necessary to the common good. To hold at this time that a special meeting called by the chairman and participated in by all the Commissioners, and of which no fraud or improper motive in the action taken is imputed, would we think be not only improper but also productive of great evil. In the cases cited by appellants' counsel to the effect that special meetings are unauthorized, there were statutes prescribing the times at which meetings should be held, and the meetings questioned were held at other times. It is of no concern that when the Commissioners adjourned on the second day of August to the first Monday in September, they impliedly at least adjourned the further consideration of the election question to the September meeting. No injury is shown to have resulted or can be presumed under the circumstances to have resulted, or can be presumed under the circumstances to

29

have resulted to the public from the consideration of the matter at the special meeting in the interim, which meeting and its purposes the public were, it appears, well advised of and attended. The power to hold the special meeting existed, and the election held under the action taken at it was open and regular, and no surprise or inconvenience to the public was occasioned by such action.

IV. The objection is also made that the election is illegal because the order of the board was for an election for the "removal of the county site," and not for "a location of county site," as required by law.

The petition, as appears by the record of the board, August 2d, was for "a change of the location of the county site" of the county, as required by the statute. In the minutes of the proceedings of August 23d the same petition is referred to as one "asking for an election to be ordered as the law directs for removal of the county site." the election to be ordered to take place on Thursday, the 30th day of September next. The "notice" published by the clerk in the *Baker County Star*, which notice the clerk was, as appears by the proceedings of August 23, ordered to write out and have published in said paper, and which appears upon its face to be "by order of the County Commissioners, held this 23d day of August, 1886," and which was prepared and read to the Commissioners at such meeting, and approved by them, and is a substantial statement of all the proceedings of the Commissioners up to that time as to such election, speaks of the petition as "praying for a change of the location" of the county site and states the order as one for an election "for the location of the county site." The notice by the Sheriff recites the filing of a petition "for a change in the location of the county site," and the granting of the petition and notifies the voters of the county that an election will be held for the purpose of

" deciding upon the location of a county site " for the county.

The petition, considering the recitals in the record, shows a desire upon the part of the signers of it for a change of the location of the county site and consequently, in law, for an election at which the sense of the people shall be taken as to whether or not there shall be a change or removal of the county site, and there is no jurisdictional defect as there was in the case of Lanier vs. Padgett, 18 Fla., 842, where no desire for a change was shown by the petition. The reference in the minutes of August 23d to the petition as " asking for an election to be ordered as the law directs for removal of the county site " should not, to say the least of it when considered in connection with the recital of the previous meeting, be construed as negativing the idea of an expression by the petition of the desire for a change. The order for the election must be construed with reference to both of such recitals as to the petition and the only reasonable construction is that it is an order for an election at which the electors may vote for any place in the county as the county site, including the existing location of it. There is nothing limiting the voter to a choice between any two particular places, as in State *ex rel.* vs. Co. Coms., 22 Fla., 29. It and the notices of election are free from such defect, and leave the voter free to cast his ballot in favor of any place in the county he may desire.

V. We do not think the offer of McClenny to build a court-house at Macclenny, if the voters would locate the county site there, and his performance of the offer invalidates the election. 10 Iowa, 212; 33 Mich., 289 ; 36 Wis., 213. The authorities recognize such offers of public convenience as legitimate in such contests. They cannot be regarded as corrupt agencies or as influencing corrupt vot-

ing. The locality as to which such offers are made presents itself in the contest as possessing the improvements or facilities covered by the offer, and where these improvements are made in accordance with the offer, there is no deception or fraud. It is unlike the case of a candidate for office, who proposes to the electors to take for his services, if elected, less than the legal salary, and undertakes thereby to overcome the honest objection of a voter on account of deficiencies believed to exist in him as a proper person for the office. The latter case may involve the integrity of the government and the unfitness of officials, while the former does not, but only offers to supply an actual public convenience.

VI. There was no error in the consideration of the affidavits used in support of the defendants' answer. There is nothing in them which should necessarily appear on the records of the commissioners that does not appear on such records. There is no essential deficiency in the records which is attempted to be supplied by the affidavits or otherwise.

VII. Considering the showing made by the records, as to the application for and order for the election and the canvass of the returns, there is no doubt that the case made by the bill was clearly overcome by the answer and affidavits in support thereof, and that the Chancellor acted properly in dissolving the injunction.

The order appealed from is affirmed.